1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                          EASTERN DISTRICT OF WASHINGTON

7    MARIA ISABEL MENDOZA,

8                          Plaintiff,              NO: 13-CV-5063-TOR

9          v.                                       ORDER GRANTING DEFENDANT'S
                                                    MOTION FOR SUMMARY
10   CAROLYN W. COLVIN, Acting                      JUDGMENT
     Commissioner of Social Security
11   Administration,

12                          Defendant.

13

14         BEFORE THE COURT are the parties' cross-motions for summary

15   judgment (ECF Nos. 17 and 19).  Plaintiff is represented by D. James Tree.

16   Defendant is represented by Nancy A. Mishalanie.  This matter was submitted for

17   consideration without oral argument.  The Court has reviewed the administrative

18   record and the parties' completed briefing and is fully informed.  For the reasons

19   discussed below, the Court grants Defendant's motion and denies Plaintiff's

20   motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    The claimant bears the burden of proof at steps one through four above.

2    *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

3    the analysis proceeds to step five, the burden shifts to the Commissioner to

4    establish that (1) the claimant is capable of performing other work; and (2) such

5    work "exists in significant numbers in the national economy."  20 C.F.R. §§

6    404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7                                    ALJ'S FINDINGS

8          Plaintiff filed applications for disability insurance benefits and supplemental

9    security income disability benefits on November 25, 2009, alleging a disability

10   onset date of November 18, 2009.  Tr. 142-143; 144-152.  These applications were

11   denied initially and upon reconsideration, and Plaintiff requested a hearing.  Tr. 90-

12   93, 96-99, 100-102, 103-104.  A hearing was held before an Administrative Law

13   Judge on December 14, 2011.  Tr. 56-85.  The ALJ rendered a decision denying

14   Plaintiff benefits on January 11, 2012.  Tr. 28-40.

15         The ALJ found that Plaintiff met the insured status requirements of Title II

16   of the Social Security Act through December 31, 2014.  Tr. 30.  At step one, the

17   ALJ found that Plaintiff had not engaged in substantial gainful activity since

18   November 18, 2009, the alleged onset date.  *Id*.  At step two, the ALJ found that

19   Plaintiff had severe impairments, *id*., but, at step three, the ALJ found that

20   Plaintiff's severe impairments did not meet or medically equal a listed impairment.

Tr. 31.  The ALJ then determined that Plaintiff had the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can sit, stand and/or walk for up to six hours in an eight hour day, with alteration between sitting and standing; she can occasionally kneel, crouch, stoop, crawl and climb ramps or stairs. She should work in proximity to, but not in close cooperation with coworkers; and should have superficial contacts with supervisors and the general public. She can occasionally (up to 33% of the time) perform tasks requiring concentration for up to two hours before taking a break. She should avoid ladders, ropes or scaffolds; and concentrated exposure to extreme cold, heat, wetness, and hazards, including unprotected heights and machinery.

Tr. 33-38.  At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a child monitor and home health care attendant.  Tr. 38.  In the alternative, at step five, the ALJ found that Plaintiff could perform the representative occupations of parking lot attendant, production assembly, and compression mold machine tender, and that such occupations existed in significant numbers in the national economy.  Tr. 39-40.  In light of the step four and alternative step five findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claims on that basis.  Tr. 40.

The Appeals Council denied Plaintiff's request for review on April 26, 2013, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1-8; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

ISSUES

Plaintiff raises three issues for review:

1.  Whether the ALJ committed harmful error by improperly rejecting treating sources;

2.  Whether the ALJ committed reversible error relying solely on the opinions of nonexamining medical advisors;[1] and

3.  Whether the ALJ conducted an incomplete credibility finding.

ECF No. 17 at 3.

DISCUSSION

**A. Opinions of Treating Sources**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a the opinion of a treating physician carries more weight than the

---

[1] Plaintiff outlines her second issue as: "Did the ALJ fail to properly consider the testimony of the vocational expert that the claimant could not work?" ECF No. 17 at 3.  Plaintiff, however, never directly briefed this issue, but rather only briefed the second issue listed by the Court.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

opinion of an examining physician, and the opinion of an examining physician

carries more weight than the opinion of a reviewing physician.  *Id.*  In addition, the

Commissioner's regulations give more weight to opinions that are explained than

to opinions that are not, and to the opinions of specialists on matters relating to

their area of expertise over the opinions of non-specialists.  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"If a treating or examining doctor's opinion is contradicted by another doctor's

opinion, an ALJ may only reject it by providing specific and legitimate reasons

that are supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d

821, 830-831 (9th Cir. 1995)).  Regardless of the source, an ALJ need not accept a

physician's opinion that is "brief, conclusory and inadequately supported by

clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

Cir. 2009) (quotation and citation omitted).

### 1.  Opinion of Dr. Byrd

Plaintiff contends that the ALJ erred in rejecting the July 12, 2011 opinion

of examining physician Dr. Chad Byrd that Plaintiff would miss four or more days

of work per month.  Tr. 349.  Dr. Byrd saw Plaintiff three times—on February 25,

2011, on March 28, 2011, and on May 24, 2011.  Tr. 503-513.  In July 2011, Dr.

Byrd endorsed a questionnaire entitled "Medical Report" on which he wrote "see record" in answer to most of the questions. Tr. 348-349. On the second page of the questionnaire, Dr. Byrd checked the space indicating "No" to the question "Would work on a regular and continuous basis cause Plaintiff's condition to deteriorate." As an explanation, he wrote, "I care for her autoimmune disease." Tr. 349. He then checked the space corresponding to the statement that she would miss on average 4 or more days per month due to medical impairments. *Id*. Unfortunately for all concerned, in the section calling for an explanation to this answer Dr. Byrd only wrote, "see record." *Id*.

The ALJ provided the following reasons for rejecting Dr. Byrd's opinions:

In March 2011, Chad Byrd, M.D., examined the claimant and diagnosed possible sacroiliitis and fibromyalgia. He noted the claimant had a "relatively negative laboratory" results, but ordered an MRI of her sacroiliac joints (Ex. 20F, p. 7; Ex. 29F, p. 4). In May 2011, Dr. Byrd examined the claimant, reported no swelling in the claimant's knees, and noted that her pain was primarily in her back at the lumbar spine. He diagnosed possible sacroiliitis questionable active or reactive that was unintelligible, chronic pain disorder and pregnancy and reported the claimant's inflammatory markers were normal. Dr. Byrd also opined that the claimant could work on a regular continuous basis without causing her condition to deteriorate, but further opined that it was likely that she would miss four or more days per month (Ex. 20F, pp. 3, 4; Ex. 29F, p. 7). The undersigned finds Dr. Byrd's prognosis for days of missed work is inconsistent with his own objective findings and assigns little weight to his opinion.

Tr. 36. The Plaintiff correctly observes that the Commissioner may not provide

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

*post hoc* rationalizations to support the ALJ's decision. *See Bray*, 554 F.3d at 1226-27.

Here, having reviewed Dr. Byrd's reports, the Court concludes the ALJ legitimately rejected Dr. Byrd's check mark opinion that was "brief, conclusory and inadequately supported by clinical findings." *See Bray*, 554 F.3d at 1228.[2]

2. **Opinion of Dr. Zimmerman**

Plaintiff contends the ALJ erred by rejecting the opinion of Laurie Zimmerman, M.D. Dr. Zimmerman performed two examinations, one on October 7, 2010 and one on December 1, 2010. Tr. 383-85. Dr. Zimmerman also prescribed a trial course of two mental health medications. *Id*. Dr. Zimmerman then opined, in a checked box format, that Plaintiff presented with numerous moderately, markedly and severely limited mental residual functional capacities.

---

[2]  Buried within Plaintiff's treating source argument is Plaintiff's contention that the ALJ committed harmful error by not finding fibromyalgia as a severe impairment at step two. ECF No. 17 at 13. The step two inquiry is only a de minimus screening device intended to dispose of groundless claims. *See Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). Here, the ALJ found Plaintiff to have chronic pain and incorporated certain limitations in the RFC finding. No harmful error has been shown.

Tr. 344-46. If credited, these limitations would preclude substantial gainful

employment. Tr. 80.

The Commissioner contends Dr. Zimmerman's assessment was inconsistent

with her own objective findings, inconsistent with other objective findings in the

record, and inconsistent with the assessment of State Agency reviewing

psychologist, Sharon Underwood, Ph.D. ECF No. 19 at 13.

The ALJ found:

In October 2010, Laurie Zimmerman, M.D., evaluated the claimant
and noted she had recently lost her baby to miscarriage and reported
that she was tearful, depressed, anxious and had some suicidal
ideation. Dr. Zimmerman diagnosed posttraumatic stress disorder,
panic disorder with agoraphobia, major depressive disorder recurrent,
moderate and a GAF score of 55 (Ex. 25, pp 3-4). In December 2010,
Dr. Zimmerman examined the claimant and reported the claimant
made good eye contact was only "somewhat" tearful, depressed and
anxious. Dr. Zimmerman reported there was no evidence of psychosis
or suicidal ideation and noted that speech rate and pattern, insight and
judgment were all normal. She adjusted the claimant's anti-depressant
medication and advised her to return for follow-up in eight weeks (Ex.
25F, p. 2).

\* \* \*

The undersigned finds that Dr. Zimmerman's evaluation is
inconsistent with her own objective findings as well the objective
findings in the record, and consequently assigns only some weight to
her evaluations.

In December 2010, the claimant participated in therapy through
November 2011. The record shows the claimant missed fourteen of
her scheduled appointments through either cancellation or no-shows
(Ex. 3F, pp. 2-5, 7, 9, 11-13, 17-21, 25, 31). Her lack of attendance
suggests that her conditions were not a significant problem. The
record also indicates inconsistencies in the severity of the claimant's

condition as well as her noncompliance with taking prescribed medication. The claimant's therapist, Susan Lind, MHP, noted that the claimant felt better and had more energy after taking her anti-depressant medication (Ex. 35F, p. 35). In January 2010, Ms. Lind reported the claimant was attending ESL classes three times a week (Ex. 35F, p. 33). In March 2011, Ms. Lind reported the claimant's condition deteriorated after she quit taking her medication and she did not "seem to notice her symptoms could improve some by taking it" (Ex. 35F, pp. 29, 30). In April 2011, the claimant reported she was feeling better after drinking tea and taking vitamins and planned to discontinue her medication because she wanted to get pregnant. She also stated that she would discontinue treatment from Dr. Zimmerman (Ex.35F, p. 26). In June 2011, Ms. Lind noted the claimant reported that she was pregnant and appeared to be happy (Ex. 35F, pp. 22, 23). Although the claimant is considered to have a severe mental impairment, the record does not indicate significant treatment for conditions that would preclude her from basic work-related activity. Instead, the undersigned finds that the claimant's mental impairment has only reduced her capacity to work at a level consistent with the residual functional capacity in this decision.

Tr. 37-38.  The ALJ also accepted the State Agency reviewing psychologist, Sharon Underwood's opinions.  Tr. 36-37.  Having thoroughly recounted the competing opinions, and the underlying objective observations and testing, the ALJ properly supported her rejection of Dr. Zimmerman's checked box conclusions.

3. **Physician's Assistant Huerta**

Plaintiff contends the ALJ committed harmful error by rejecting the opinions of Javier Huerta, PA.  Plaintiff concedes the ALJ considered the proper regulatory

factors but assigns error because the ALJ "merely stated that the fact PA Huerta is not a doctor means his [opinion] is given less weight."  ECF No. 17 at 19.

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971).  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  No reversible error has been shown.

4.  **Ms. Lind and Ms. Turner, Mental Health Professionals**

Plaintiff contends that the opinions of Ms. Lind and Ms. Turner, both mental health professionals, if accepted, support a finding that she cannot work.  As explained above, the Court does not resolve conflicts in the evidence.  No error has been shown.

**B. Opinions of Reviewing Medical Advisors**

Plaintiff argues the ALJ gives significant weight to the opinions of reviewing consultants Dr. Underwood, Dr. Scottolini, and Dr. Gardner, none of which ever saw Ms. Mendoza face-to-face.  ECF No. 17 at 20.  Plaintiff contends that it was error to rely "on these persons (sic) functional limitations exclusively while erroneously rejecting the opinions her treating providers who opined limitations that would preclude all work."  *Id*.

1    Plaintiff's uncited partial quotation from *Morgan v. Comm'r of Soc. Sec.*

2    *Admin.*, 169 F3d 595, 602 (9th Cir. 1999), does not stand for the proposition she is

3    making.  The reports of consultative physicians called in by the Secretary may

4    serve as substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 752 -753 (9th

5    Cir. 1989).  As the *Morgan* Court recognized, "But we have consistently upheld

6    the Commissioner's rejection of the opinion of a treating or examining physician,

7    based in part on the testimony of a nontreating, nonexamining medical advisor."

8    *Id*. (also citing *Magallanes*).  No error has been shown here.

9    **C. Adverse Credibility Determination**

10    In social security proceedings, a claimant must prove the existence of

11    physical or mental impairment with "medical evidence consisting of signs,

12    symptoms, and laboratory findings."  20 C.F.R. §§ 416.908; 416.927.  A

13    claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R.

14    §§ 416.908; 416.927.  Once an impairment has been proven to exist, the claimant

15    need not offer further medical evidence to substantiate the alleged severity of his or

16    her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

17    As long as the impairment "could reasonably be expected to produce [the]

18    symptoms," the claimant may offer a subjective evaluation as to the severity of the

19    impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation

2    omitted).

3          If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

4    must make a credibility determination with findings sufficiently specific to permit

5    [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

6    testimony." *Thomas v. Barnhart*, 278 F .3 d 947, 958 (9th Cir. 2002).  In making

7    this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation

8    for truthfulness; (2) inconsistencies in the claimant's testimony or between his

9    testimony and his conduct; (3) the claimant's daily living activities; (4) the

10   claimant's work record; and (5) testimony from physicians or third parties

11   concerning the nature, severity, and effect of the claimant's condition.  *Id.*  If there

12   is no evidence of malingering, the ALJ's reasons for discrediting the claimant's

13   testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d

14   661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must

15   specifically identify the testimony she or he finds not to be credible and must

16   explain what evidence undermines the testimony." *Holohan v. Massanari*, 246

17   F.3d 1195, 1208 (9th Cir. 2001).

18         First, Plaintiff argues that she was not given adequate notice that the ALJ

19   would take issue with her "failure to follow prescribed treatment" which lack of

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

notice purportedly violated a SSR 82-59 and an internal policy manual known as HALLEX.

Plaintiff did not refuse treatment, she failed to follow the prescribed course of treatment and thus, SSR 82-59 is inapplicable to her situation. *See Molina v. Astrue*, 674 F.3d at 1114 n.6. ("This rule is not applicable here, because the ALJ determined that Molina was not disabled, and Molina's failure to seek treatment (to the extent the ALJ considered it at all) was merely a factor in the ALJ's credibility determination.").  We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. *Id*. at 1113 (citations and quotation marks omitted).  Plaintiff's reliance on an internal policy manual fares no better.  HALLEX does not impose judicially enforceable duties on either the ALJ or this court.  *Lockwood v. Commissioner Social Sec. Admin*., 616 F.3d 1068, 1072 (9th Cir. 2010) (citation omitted).

Next, Plaintiff disputes the negative inference the ALJ made as to the reason why she stopped her medication.  Plaintiff now offers a valid reason for discontinuing her medication–-that she wanted to get pregnant and her previous miscarriage may have been caused by her medications.

But that sole reason for stopping the prescribed medicine that helped her does not denigrate the other reasons the ALJ recited in finding her not fully

credible, including that she failed to follow treatment recommendations by cancelling physical therapy and other therapy appointments and by not wearing her knee brace.

Those reasons have not been challenged here. Clear and convincing reasons supported by substantial evidence support the ALJ's finding.

Defendant is entitled to summary judgment.

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** July 7, 2014.

THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18